843 So.2d 237 (2001)
Edward Dwight COLEMAN
v.
STATE of Alabama.
CR-00-0835.
Court of Criminal Appeals of Alabama.
November 30, 2001.
Opinion on Return to Remand March 1, 2002.
Rehearing Denied April 19, 2002.
Certiorari Denied August 30, 2002.
*238 Edward Dwight Coleman, pro se.
William H. Pryor, Jr., atty. gen., and Stephen N. Dodd, asst. atty. gen., for appellee.
Alabama Supreme Court 1011504.
SHAW, Judge.
Edward Dwight Coleman appeals the district court's summary denial of his Rule 32, Ala.R.Crim.P., petitions for postconviction relief, in which he attacked his June 20, 1986, guilty-plea convictions for two counts of possession of a forged instrument in the second degree, violations of § 13A-9-6, Ala.Code 1975. Coleman was sentenced to two years' imprisonment for each conviction; the sentences were to run concurrently. He did not appeal.
On December 13, 2000, Coleman filed two Rule 32 petitions attacking his convictions. In his petitions, Coleman alleged that the district court lacked jurisdiction to accept his guilty pleas, to render judgment, and to impose sentence because, he said, the district attorney failed to comply with § 15-15-21, Ala.Code 1975, and § 15-15-22, Ala.Code 1975. On December 14, 2000, the district court summarily denied Coleman's Rule 32 petitions.

I.
Coleman's contention that his convictions and sentences are void because the district court did not comply with § 15-15-22 is based upon his contention that on June 20, 1986, he gave notice of his intent to plead guilty, his pleas were accepted, and he was sentenced. However, we have reviewed the record and the district court did, in fact, comply with § 15-15-22, which requires the court to "fix a *239 date for the defendant to formally make and enter his plea of guilty in open court, which date shall not be ... within three days after notice to the court of his intention to plead guilty."
The district court's March 7, 2001, order states, in part:
"The court has reviewed the court record and files connected with these cases and finds as follows:
"1. On May 15, 1986, the defendant was arrested and charged with the above felonies.
"2. On May 22, 1986, he was appointed an attorney to represent him in these matters.
"3. On June 5, 1986, he signed a written intent to plea [sic] in each case.
"4. On June 20, 1986, he entered a plea of guilty to these offenses."
(C. Supp.5.) Our review of the record supports the above-stated findings of the district court. Thus, Coleman is not entitled to relief on this issue.

II.
Coleman also contends that his convictions and sentences are void because the district attorney failed to comply with § 15-15-21, which provides:
"When the desire of a defendant to plead guilty is made known to the court, it shall direct the district attorney of such court to prefer and file an information against such defendant, under the oath of such district attorney or some witness, which information shall accuse the defendant, with the same certainty as an indictment, of the criminal offense for which he is being held."
(Emphasis added.) On May 24, 2001, the district court issued the following order:
"This is from an order of May 3, 2001, of the Court of Criminal Appeals to supplement the record on appeal from an order of this court denying the petition under Rule 32, [Ala.R.Crim.P.]:
"This court did not accept the plea in 1986 [another judge took the plea] but [this court] has gone through all the items in the court file. This court could not find an executed information in either case. ... All other forms for the taking of a plea are present in the court file."
(C. Supp.4, 80) (emphasis added). Thus, the issue on appeal is whether the district court had subject-matter jurisdiction to accept Coleman's guilty pleas, given that the court's files do not contain an information purporting to charge the offenses.
In Ex parte Looney, 797 So.2d 427 (Ala. 2001), the Alabama Supreme Court discussed whether the word "shall," as used in § 15-15-20.1(b), Ala.Code 1975[1]specifically that portion of the statute that states, "[t]he information shall be made under oath"is imperative and mandatory. "`The word "shall" is clear and unambiguous and is imperative and mandatory.' " Ex parte Looney, 797 So.2d at 428, quoting Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998).
In Ex parte Looney, the Alabama Supreme Court also stated:
"In accordance with the caselaw cited above, we conclude that the word `shall,' *240 as it is used in § 15-15-20.1, Ala.Code 1975, demands that the information be made under oath. The information submitted to the trial court at Looney's plea hearing was signed by the district attorney. However, the record contains no evidence whatever to indicate that the information was given under oath. Therefore, because it does not comply with the mandatory requirements of the statute, the information is defective.
". . . .
"We conclude that because a sworn information is essential to confer on a trial court jurisdiction to accept a guilty plea, the district attorney's failure to make the information under oath cannot be waived. Thus, Looney could raise this issue on appeal [even though he had not objected to it at the trial level].
"Because the information is defective, the trial court did not have jurisdiction to accept the plea. `In the absence of an indictment or information upon which this prosecution should have begun, the trial court was without jurisdiction to render judgment.' Ross v. State, [529 So.2d 1074, 1078 (Ala.Crim.App.1988)] (citing Woodham v. State, 28 Ala.App. 62, 178 So. 464 (1938)). `Thus, the judgment was null and void and of no force and effect.' Id."

797 So.2d at 429. The State attempts to distinguish Ex parte Looney on the following grounds:
"Here, however, not only would the complaint filed in the Jefferson County District Court by Sam Levio [Coleman stole some of Levio's checks in 1986 and Levio filed complaints in the district court] have been executed under oath, but arrest warrant # 00051733 as issued by the Jefferson County District Court would also have been executed under oath. Therefore, unlike Looney, Coleman has failed to show that the State's charging instrument was not filed under oath as required by Ala.Code [1975], § 15-15-20.1(b)."
(State's brief at p. 11, n. 3) (emphasis in original). We do not agree that the cases are distinguishable on this basis. Section 15-15-20.1(a), Ala.Code 1975, states, "In any criminal proceeding for a non-capital felony offense commenced by a complaint, the defendant may give written notice ... that the defendant desires to plead guilty as charged." (Emphasis added.) It is the receipt of this written notice of the defendant's intent to plead guilty that triggers the filing of "[t]he information [which] shall be made under oath," pursuant to § 15-15-20.1(b). Thus, § 15-15-20.1(b) requires the filing of an information "made under oath" even though the criminal proceeding was "commenced by a complaint." Section 15-15-21 states that "the court ... shall direct the district attorney ... to ... file an information against such defendant... which information shall accuse the defendant, with the same certainty as an indictment, of the criminal offense for which he is being held." In Ex parte Looney a defective information was filed; in the present case, the record does not contain an information filed by the district attorney, as required by § 15-15-21.
In its brief to this Court, the State points out that the district court summarily denied Coleman's Rule 32 petitions before the State had an opportunity to file a response. Thus, the factual allegations contained in Coleman's Rule 32 petitions remain unrefuted. The State requests that we remand the cause to the district court so that it might have an opportunity to seek to refute whether an information was, in fact, ever filed. Therefore, we remand this cause to the district court for that court to conduct an evidentiary hearing regarding whether an information was, in fact, filed by the district attorney as *241 required by § 15-15-21. Due return shall be filed with this Court no later than 56 days from the date of this opinion. The return to remand shall include the district court's written findings, a transcript of the evidentiary hearing, and any other evidence taken by the court.
REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

On Return to Remand
SHAW, Judge.
On November 30, 2001, this Court remanded this case to the district court for that court to conduct an evidentiary hearing on whether an information was, in fact, filed by the district attorney as required by § 15-15-21, Ala.Code 1975. See Coleman v. State, 843 So.2d 237 (Ala.Crim. App.2001). In our November 30, 2001, opinion we noted that Edward Dwight Coleman's Rule 32, Ala.R.Crim.P., petitions had been summarily denied before the State filed a response and that although the record did not contain an information filed by the district attorney, as required by § 15-15-21, we were remanding for a hearing to allow the State an opportunity to file a response on the issue whether an information was, in fact, ever filed.
On return to remand, the district court submitted a written order, dated January 16, 2002, which states:
"This court finds after hearing the testimony at the evidentiary hearing that as a matter of fact that an information was properly filed in these cases and that [Coleman's] petition in each case is due to be denied."
The court attached to its order a transcript of the evidentiary hearing and the affidavit of the district attorney. We note that the district court did an excellent job on remand.
At the evidentiary hearing, the State pointed out that because these convictions occurred in 1986, the documents contained in the files maintained by both the district court clerk's office and the district attorney's office no longer existed in their original form, but that relevant documents from these files had been reduced to microfilm in the district court clerk's office and to microfiche in the district attorney's office. It is undisputed that the microfilm files maintained in the district court clerk's office do not contain an information for either of these cases. However the microfiche files maintained by the district attorney's office do contain copies of the unsigned information for both cases. The Jefferson County District Attorney filed an affidavit, stating:
"1. That I have been the duly elected District Attorney since 1984 for the Tenth Judicial Circuit. In June of 1986, I was the duly elected District Attorney for said Circuit.
"2. As a matter of procedure, the Deputy District Attorney (DDA) assigned to any one of the District Courts negotiates settlements of felony cases with defense attorneys, and enters into agreements for the resolution of such cases by way of a plea agreement. When such an agreement is reached, the DDA will have the appropriate secretary prepare an `Information' which is the defendant's notice to the Court of his or her intent to plead guilty in accordance with the agreement. The legal secretary creates two (2) copies of the Information. The DDA takes one copy of the Information and signs my name in the appropriate blank and then signs their own name in the affidavit blank. Our notary witnesses this and affixes his/her seal. On the day of the plea, the DDA *242 presents the signed and notarized copy to the Court and the unsigned copy is retained in our file. This has been our policy since I have been the District Attorney for the Tenth Circuit.
"3. Our office files on Edward Dwight Coleman were searched. Records relating to Mr. Coleman's two 1986 convictions for Possession of a Forged Instrument in the Second Degree were located in storage and had been photographed onto microfiche. Among other things found were two documents, of which copies have been attached (Exhibits A and B). Exhibit A is the Information for Edward Dwight Coleman in DC-86-2272. Exhibit B is the Information for Edward Dwight Coleman in DC-86-2273. Both exhibits are consistent with the unsigned Information which is retained in our files when an Information plea is done in District Court. The only reason that these documents would be in our file would be if an Information had been prepared for these cases.
"4. I am not aware of any cases in my seventeen (17) years as District Attorney where a felony plea was taken in District Court without my office filing an Information with the Court. This practice is instructed to every DDA that is assigned to District Court and to every legal secretary that works in our District Court office.
"5. I know of no reason for an unsigned copy of an Information to be in one of our files unless there was a guilty plea entered in that case, except under the following circumstance. If a defendant, subsequent to entering into a plea agreement through his/her attorney, withdraws from said agreement prior to actually entering the plea, then there would be the unsigned copy still in our file, although no guilty plea was entered. However, in that event, there would be a subsequent docketing of the case, or cases, on the Grand Jury [docket] and thereafter either a record of a `No Bill' by the Grand Jury, or a `True Bill' and a subsequent docketing of the case in Circuit Court with a CC case number. A search of our records and those of the Circuit Clerk's reveal no record of these cases being presented to the Grand Jury nor any docketing of them in the Circuit Court. Therefore, the only reasonable and logical explanation for the unsigned `Information' copy in our file would be that the defendant entered a plea of guilty in each of the cases in question."
The district court judge who took the pleas in 1986 testified to the following at the evidentiary hearing:
"THE COURT: All right. I have Judge McCormick, who is a Circuit Court Judge and was a District Court Judge in 1986.
"Judge, do you remember the case of Edward Dwight Coleman?
"JUDGE MCCORMICK: Absolutely not.
"THE COURT: Did you take guilty pleas on information in 1986?
"JUDGE MCCORMICK: Yes, I did.
"THE COURT: Can you tell me anything about your procedure in taking guilty pleas?
". . . .
"JUDGE MCCORMICK: Well, to the best of my knowledge and belief, I would have taken a plea based on an information and an information being in the file and having been filed by the district attorney's attorney at that time. I would not have taken a plea without a formal pleading or notice.
". . . .
"[COLEMAN'S ATTORNEY]: Your Honor, is it in the realm of possibility, *243 could it possibly have happened that the information was prepared, brought to your Court, utilized, and then improperly filed or not filed at all or not signed properly? Could any of those things happen? Is it within the realm of possibility that they could have happened?
"JUDGE MCCORMICK: Anything is possible, but it's not likely that I would have taken a plea without having a formal charge of some sort.
"[COLEMAN'S ATTORNEY]: Yes, Your Honor. But then it is possible that the paperwork could have been somewhat snafued just after the plea was taken?
"JUDGE MCCORMICK: Sometime after the plea the information may have gotten away from the file in some way because we handle so much paperwork.
"[COLEMAN'S ATTORNEY]: Right. Do you think there's any chance, any possibility whatsoever that the paperwork was assumed to be there on these particular cases and weren't?
"JUDGE MCCORMICK: I don't think so. I think that it would have been brought to my attention or someone else's attention at the time. Of course it's been a long time and I don't have any personal recollection of this case or any other case during that period. I think as a matter of procedure that we would have known that, if there was an information that was missing at the time of the plea.
"[COLEMAN'S ATTORNEY]: In these two particular cases involving Mr. Coleman it is perhaps just coincidental or it may be an astounding coincidence that there is not a properly signed information in either of these cases. If there had been a situation where the paperwork had simply been lost, it might be more reasonable to believe that one piece of paper had slipped out of one of these courts files, but doesn't it seem a little unusual to youdo you have any potential explanation as to why both of these informations would be missing from two separate court files?
"JUDGE MCCORMICK: I have no explanation for that. I think it would be more unusual for either the deputy DA handling the case or for defense counsel or myself not to notice that the charging papers weren't in the file at the time of the pleas."
(Transcript of evidentiary hearing, pp. 20-24.)
The judge who accepted the pleas in 1986 testified that while he did not have any personal recollection of these cases, he "would not have taken a plea without a formal pleading or notice." (Transcript of evidentiary hearing, p. 21.) The district attorney testified as to his office's procedure in 1986 regarding the preparation and filing of an informationthat it was the policy of the district attorney's office to prepare two copies of the information; that the DDA assigned the case would present the signed and notarized copy of the information to the court and retain the unsigned copy of the information in the district attorney's file; that the microfiche files maintained by the district attorney's office contain an unsigned information that had been prepared in both of these cases; and that the unsigned copies of the information were attached to the district attorney's affidavit. Additionally, these cases are 16 years old and the only documents in the district court clerk's office relating to the cases are on microfilm and it is possible that the information was, in fact, contained in the files, but was not put on microfilm.
*244 When viewing the evidence in its entirety, we find that it supports the district court's determination that "an information was properly filed in these cases and [Coleman's] petition in each case is due to be denied." The district court's judgment is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
NOTES
[1] Section 15-15-20.1(b) provides, in part:

"Upon receipt of the written notice from the defendant stating his or her desire to plead guilty, the court shall direct the district attorney to prefer and file an information against the defendant. The information shall be made under oath of the district attorney or a witness, and shall accuse the defendant with the same specificity as required in an indictment of the offense or offenses for which the defendant is charged."
(Emphasis added.)